11th Court of Appeals









11th Court of Appeals

Eastland, Texas

Opinion

 

Mario John Valdez, Jr.

Appellant

Vs.                   No. 11-02-00327-CR B Appeal from Dallas County

State of Texas

Appellee

 

The trial court, in a nonjury trial, found Mario
John Valdez, Jr. guilty of arson; and, after appellant pleaded true to a
previous arson conviction alleged for enhancement, the trial court assessed
appellant=s
punishment at confinement for 45 years and a $100 fine.  We affirm.

Appellant contends in his first issue that the
evidence is factually insufficient to support his conviction.  Appellant specifically argues that the
testimony established that he was misidentified as the arsonist.  Appellant did not testify at the trial.

In order to determine if the evidence is factually
sufficient, we must review all of the evidence in a neutral light and determine
whether the evidence supporting guilt is so weak as to render the conviction
clearly wrong and manifestly unjust or whether the evidence supporting guilt,
although adequate when taken alone, is so greatly outweighed by the
overwhelming weight of contrary evidence as to render the conviction clearly
wrong and manifestly unjust.  Vasquez
v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002); Johnson v. State, 23
S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).

Regarding the degree of deference that this court
must show to the fact finder, the court in Johnson said:








[T]he
reviewing court must always remain cognizant of the fact finder=s role and unique position, a position
that the reviewing court is unable to occupy. 
The authority granted in Clewis to disagree with the fact finder=s determination is appropriate only
when the record clearly indicates such a step is necessary to arrest the
occurrence of a manifest injustice.  
Otherwise, due deference must be accorded the fact finder=s determinations, particularly those
determinations concerning the weight and credibility of the evidence.   Jones v. State, 944 S.W.2d [642,
648-49 (Tex.Cr.App.1996), cert. den=d,
522 U.S. 832 (1997)].

 

Johnson v. State, supra at 9.

The record shows that, at approximately 4:00 p.m.
on October 6, 2001, Juan Francisco Villa=s
house was damaged by fire that was intentionally set and was not
accidental.  Appellant was at Villa=s house drinking beer on the afternoon
of the fire.  Between 3:00 and 4:00 p.m.,
Villa received a telephone call from appellant=s
girlfriend who was looking for appellant. 
The girlfriend told Villa to keep appellant at the house because another
person was looking for appellant and wanted to beat him up.  Villa testified that, when appellant
questioned him about the call, he did not tell appellant anything.  Appellant left Villa=s
house.  Shortly thereafter, Villa was
driving his car when he saw appellant who looked upset, was bare chested, was
wearing overalls, and was carrying a white T-shirt in his hand.  Appellant threw a large rock that hit Villa=s car. 
Within a few minutes, Villa saw smoke coming from his house.  Villa did not see appellant after the
rock-throwing incident.

Appellant=s
girlfriend testified that, after the telephone call she made to Villa=s house, she saw appellant on the
street.  She stated that appellant
thought that she was having an affair with Villa.  Shortly before the fire, appellant and his
girlfriend had a conversation, and appellant swung his T-shirt at her.  The conversation ended; and, as appellant
walked away, he called her a Abitch@ and told her that their relationship
was over.

Appellant=s
former girlfriend testified that, approximately one week before the fire, she
talked to appellant and that he told her that he had heard that Villa and
appellant=s
girlfriend were having an affair. 
Appellant was upset; and the former girlfriend stated that, when
appellant became angry, he would sometimes threaten, in general, to burn down
someone=s
house.  The former girlfriend stated that
appellant never specifically threatened to burn down Villa=s house.








Appellant=s
brother, Arthur Valdez, pleaded guilty to aggravated sexual assault of a child
in March of 2002.  As part of the plea
agreement, Arthur was required to testify against appellant in the arson
case.  At the trial of this case, Arthur
testified that he did not know how the fire started and claimed that he did not
recall answering questions during the plea hearing about what appellant had
said to him regarding appellant=s
arson case.  However, after he was
confronted with a transcript of his testimony at the plea hearing, Arthur
admitted that, at the plea hearing, he had testified that appellant told him
that he had started the fire that damaged Villa=s
house.

William Davis along with his father Robert Earl
Davis and a friend Frank Davis were across the street from Villa=s house when appellant walked up to
them and started talking to them about the sale of a car.  Appellant came from the direction of Villa=s house.  Appellant had a lighter in his hand, but
appellant did not have a cigarette. 
William Davis stated that they talked to appellant for less than a
minute.  William stated that, within
minutes after appellant walked away, he and his companions heard popping and
cracking and saw smoke coming from Villa=s
house.  William testified that
approximately one week after the fire he was shown a six-man photographic array
and that he picked appellant as the person he saw coming from near Villa=s house minutes before he observed the
burning house. William testified that, at the scene, he told the police the
person he saw with the cigarette lighter was a medium-build Hispanic man.

Robert Davis testified that he was Anot sure@
whether appellant was the man that walked up to them minutes before the
fire.  Robert stated that the man they
talked to was holding a cigarette lighter. 
When shown the photographic array after the fire, Robert did not pick
appellant as the man with the cigarette lighter.

The assistant fire marshal testified that he
interviewed the Davises at the fire and that they described the suspect as a
Hispanic male, approximately 5!
3"
tall, with dark hair, a scar on his right arm, and wearing a white T-shirt and
overalls.

We hold that the evidence is factually sufficient
to support the verdict.  The trial court
chose to believe appellant=s
admission to his brother and the other circumstantial evidence.  We disagree with appellant=s characterization of the evidence as
merely showing that appellant was in the vicinity of Villa=s house at the time of the fire.  Appellant=s
first issue is overruled.

In the second issue, appellant contends that the
trial court erred in admitting the in-court identification of appellant by
William Davis.  Appellant argues that the
photographic array shown to William was impermissibly suggestive and gave rise
to a substantial likelihood of misidentification.  








This was the first attempt by the assistant fire
marshal to prepare a photographic array. 
In appellant=s
photograph, he had a mustache.  Only two
other individuals in the array of six photographs had a mustache.  One individual was depicted in the same
photograph twice in the array.  The record reflects the following comments by
the trial court regarding appellant=s
motion to suppress the in-court identification by William:

THE COURT: All right.  The Court is going to deny your Motion to
suppress the in-court identification by the first Mr. Davis.

 

Although I do believe that it is certainly
arguable that the photo line-up was impermissibly suggestive, I don=t think you meet the second prong by
clear and convincing evidence and by the totality of the circumstances that his
in-court identification was not independent of his recognizing [appellant] from
the scene on October 6th, 2001.

 

And the Court takes into consideration the
opportunity that Mr. Davis had to see [appellant].  They had a conversation face to face when it
was still daylight.

 

I think he did not demonstrate any uncertainty
when he identified [appellant] in court and, further, the time elapsed since
the date of the offense, the time he viewed the photo and the day that he
identified [appellant] in court, I think, also gives weight to the Court=s belief that the in-court
identification was not tainted by the photo line-up.

 

We will assume, without deciding, that the array
was an impermissibly suggestive pretrial 
procedure; nevertheless, we must determine whether a very substantial
likelihood for irreparable misidentification had been created.  The trial court made the following written
findings of fact and conclusions of law:

1.

 

The witness, William Davis, has identified the
defendant in this cause as being connected with the commission of the offense
alleged in the indictment.

 

2.

 








The in-court identification of the defendant by the respective
witness was not influenced by said witness having been shown a photographic
lineup as reflected in State=s
Exhibit Number 31, which lineup and photo array the Court finds to have been
conducted on or abut October 13th, 2001, at the place reflected in
the witness=
testimony.

 

3.

 

The Court further finds that:

 

A.  The said
witness had ample opportunity to observe the defendant under adequate lighting
conditions.

 

B. No substantial discrepancy has been shown to
exist between the pre-lineup description and the actual appearance of the
defendant.

 

C. No evidence has been shown to exist of the said
witness having identified someone other than the defendant.

 

D. No undue influential lapse of time occurred between
the  commission of the offense and the
subsequent occasions on which the witness identified either the defendant or a
picture of the defendant.

 

*    *    *

 

5.

 

In regard to the identification testimony of William Davis, the
Court finds:

 

A. That the William Davis, viewed a photographic
lineup containing (among others) the defendant.

 

B. That the witness, William Davis, was able to
identify the defendant from said photographic lineup.

 

6.

 

The Court concludes that the identification procedures reflected
by the evidence in this case did not lead to mistaken identity.  Further, the Court finds that the in-court
identification of the defendant by the witness, William Davis, was based on his
memory of what the defendant looked like on October 6th, 2001, and
was not unduly influenced by the photo line-up.

 

 








The court in Barley v. State, 906 S.W.2d
27, 34-35 (Tex.Cr.App.1995), said:

In making a determination as to whether a very
substantial likelihood for irreparable misidentification has been created, we
consider several non‑exclusive factors enumerated by the Supreme Court
in  Neil v. Biggers, 409 U.S. 188,
93 S.Ct. 375, 34 L.Ed.2d 401 (1972).  Webb,
supra; Cantu, supra.  These factors
are:  1) the witness= opportunity to view the criminal act,
2) the witness= degree
of attention, 3) the accuracy of the suspect=s
description, 4) the level of certainty at the time of confrontation, and 5) the
time between the crime and confrontation. 
Id   These factors are weighed
against the corrupting effect of any suggestive identification procedures.  

 

The record reveals that William had a clear
opportunity to observe appellant. 
William testified that he felt Apretty
certain@ that
appellant was the person he saw coming across the street near Villa=s house.  William stated that, as far as Aface-wise,@
he recognized appellant.  William stated
that appellant Awas right
there in my face.@  William stated on cross-examination that he
probably viewed appellant at the scene for Aless
than ten or eleven seconds, maybe.@  William identified appellant in the only
lineup shown to him about a week after the fire.  William stated that his in-court
identification was based on his memory of appellant.  We hold that William=s
in-court identification of appellant was independent from the pretrial
photographic array, and we conclude that no substantial risk of irreparable
misidentification was created so as to deny appellant due process.  The trial court properly allowed William=s testimony.  Appellant=s
second issue is overruled.

The judgment of the trial court is affirmed.

 

AUSTIN McCLOUD

SENIOR JUSTICE

 

February 19, 2004

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of: Wright, J., and

McCall,
J., and McCloud, S.J.[1]











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.